UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ABOUBACAR BONKOUNGOU, *et al.,*

                        Plaintiffs,

           -against-

ROYAL PROTECTIVE SERVICES, INC.

                       Defendant.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
23 CV 6553 (CBA) (CLP)

**POLLAK**, United States Magistrate Judge:

On August 31, 2023, plaintiffs Aboubacar Bonkoungou and Tenga Compaore ("plaintiffs"), on behalf of themselves and all others similarly situated, commenced this action against defendant Royal Protective Services, Inc. ("RPS" or "defendant"), seeking compensation for unpaid overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and unpaid minimum and overtime wages, spread-of-hours pay, and statutory damages for failure to provide wage statements and notices, in violation of the New York Labor Law ("NYLL"), §§ 190 et seq., §§ 650 et seq. (Compl.[1] ¶¶ 77-103). Plaintiffs also seek damages under a breach of contract claim, as third-party beneficiaries, for unpaid prevailing wages, which govern city and state contracts. (Id ¶¶ 36, 37, 104-108); see NYLL §§ 230, 231.

Currently pending before this Court on referral from the Honorable Carol B. Amon, United States District Judge, is plaintiffs' Motion for Default Judgment ("Motion"), filed January 7, 2024 (ECF No. 17). For the reasons set forth below, this Court respectfully recommends that the district court grant plaintiffs' motion with respect to liability as to plaintiffs' unpaid overtime and breach of contract claims and deny without prejudice plaintiffs' motion with respect to

---

[1] Citations to "Compl." refer to plaintiff's Class Action and Collective Action Complaint, filed August 31, 2023 (ECF No. 1).

1

damages.

## FACTUAL BACKGROUND

Defendant RPS is alleged to be a New York corporation, with a registered business address at 28 Autumn Lane, Suite 100, North Amityville, New York, 11701, and a principal place of business at 101 Pardee Avenue, Islip, New York, 11751. (Compl. ¶¶ 7, 8). According to the Complaint, defendant owns and operates a security patrol and service company that contracted with various public entities, including the New York City Public Schools (the "Public Schools"), and/or the New York City Department of Education ("NYC DOE") and/or the New York State Department of Education ("NYS DOE") (collectively, the "Public Entities"), to provide security services for numerous public schools in New York City. (Id. ¶¶ 8, 32). Plaintiffs allege that RPS is an "employer" engaged in interstate commerce, with gross revenues in excess of $500,000. (Id. ¶¶ 9-10).

Plaintiff Aboubacar Bonkoungou ("Bonkoungou"), a resident of the Bronx, N.Y., alleges that from 2021 through June 2023, he was employed by defendant RPS as an unarmed security guard at New York City public schools in Brooklyn and Staten Island. (Id. ¶¶ 4, 39). Plaintiff Tenga Compaore ("Compaore"), also a Bronx resident, alleges that he was employed by defendant RPS as an unarmed security guard from January 2019 through December 2021, assigned to various public schools in Brooklyn, including PS 197, the Kings Highway Academy. (Id. ¶¶ 3, 54). Both plaintiffs allege that their work did not involve executive or administrative responsibilities. (Id. ¶¶ 40, 55).

Plaintiffs allege that RPS' contracts with the various Public Entities obligated defendant to pay plaintiffs at the local prevailing wage rates, including any required supplemental benefits and overtime premiums. (Id. ¶ 33). Plaintiffs assert that they are intended third-party

2

beneficiaries of RPS contracts with the Public Entities and therefore should have been paid prevailing wages pursuant to NYLL § 230. (Id. ¶ 37).

Mr. Bonkoungou alleges that during his employment, he worked a regular schedule each week of two shifts – one from Friday night at 12:00 midnight until Sunday at 8:00 a.m., and another from Sunday at 4:00 p.m. until Monday at 8:00 a.m. (Id. ¶ 42). For these 48 hours of work, Mr. Bonkoungou was paid each week $15.00 per hour by check for 32 hours and $15.00 per hour in cash for 16 hours. (Id. ¶¶ 42, 43). Regardless of the exact number of hours worked, Mr. Bonkoungou received the same pay, which was at times below the prevailing wage rate in effect. (Id. ¶¶ 44-45). He also alleges that he was not paid overtime wages for hours worked over 40 in a week, did not receive an additional hour of pay at the minimum wage for each day he worked a shift longer than 10 hours, and he did not receive any supplemental benefits during his employment with RPS. (Id. ¶¶ 46, 48, 50). He alleges that defendant's failure to pay proper wages was willful. (Id. ¶¶ 47, 49, 51). Finally, plaintiff Bonkoungou alleges that defendant failed to provide him with a written notice providing the information required by the Wage Theft Prevention act ("WTPA"), and that he did not receive records of his compensation, also in violation of the WTPA. (Id. ¶¶ 52, 53).

Plaintiff Compaore alleges that during his employment with RPS, he worked a regular daily schedule, seven days per week from 10:00 a.m. until 10:00 p.m., totaling 84 hours per week. (Id. ¶¶ 57, 58). He was paid $15.00 an hour in two checks: the first check was for 40 hours per week; the second check was for 44 hours per week. (Id. ¶ 59). He received these two checks in these amounts for all the hours he worked. (Id. ¶ 60). He was not paid overtime for hours worked over 40 in a week, was not paid prevailing wages, was not paid spread-of-hours pay, did not receive supplemental benefits, and was not give written notice and weekly pay

records as required by the WTPA. (Id. ¶¶ 61-68). He asserts that these violations were willful. (Id.)

Plaintiffs bring NYLL and breach of contract claims on behalf of themselves and a class of non-exempt personnel employed by defendant on or after six years before the filing of the Complaint (id. ¶¶ 21-30), as well as FLSA claims on behalf of other similarly situated employees of defendant. (Id. ¶¶ 16-20). Plaintiffs assert claims for minimum wage violations under the NYLL (Count I), overtime claims under the FLSA and NYLL (Counts II and III), spread-of-hours claims under the NYLL (Count IV), claims under the WTPA (Count V), and breach of contract and unjust enrichment claims. (Counts VI and VII).

## PROCEDURAL HISTORY

Defendant was served with the Summons and Complaint on November 8, 2023, with proof of service filed on November 13, 2023. (ECF No. 11). Defendant failed to file an answer or otherwise respond to the Complaint and on December 7, 2023, the Clerk of Court entered a default against defendant. (ECF No. 15). Plaintiffs thereafter filed their motion for default judgment.

In support of the Motion, plaintiffs each filed Declarations (ECF Nos. 17-1 and 17-2), a chart detailing the time spent by counsel (ECF No. 17-3), a Memorandum of Law (ECF No. 17), and a proposed Default Judgment (ECF No. 17-4).

On January 8, 2024, the Motion for Default Judgment was referred to the undersigned by the district judge. On May 6, 2024, this Court issued an Order directing plaintiffs to notify the Court as to whether they would be seeking to amend their Complaint in light of the recent trend of caselaw in the Circuit requiring allegations of concrete harm in order to assert standing to bring the WTPA claims. (Order dated May 6, 2024). Plaintiffs responded by letter dated May

4

20, 2024, indicating that they did not wish to file an amended complaint and were withdrawing their WTPA claims. (ECF No. 18).

Thereafter, on June 14, 2024, this Court issued an Order directing defendant to submit any papers in response to plaintiffs' motion on or before July 19, 2024. (ECF No. 19). An inquest hearing was scheduled for July 25, 2024. (Id.) Plaintiffs appeared at the inquest hearing and gave testimony. (Minute Entry, dated August 5, 2024). Plaintiffs also submitted an amended damages chart following the hearing, as well as documentation of the applicable prevailing wage rates over the relevant time period, and proof of service on defendant. (ECF Nos. 24, 25). Defendant failed to appear at the inquest hearing and has not filed any papers in response to plaintiffs' motion for default judgment. Accordingly, the Court proceeds to consider the Motion.

## DEFAULT JUDGMENT

The Court first addresses the question of whether default judgment should enter against the defendant as to some or all of plaintiffs' claims. This analysis requires the Court to determine whether the allegations in the Complaint, taken as true for purposes of a motion for default judgment, establish liability on the part of the defendant for the conduct complained of in the Complaint. As described in detail below, the Court concludes that default judgment is appropriate as to plaintiffs' unpaid overtime and breach of contract claims, but not plaintiffs' minimum wage or spread-of-hours claims. Since plaintiffs have withdrawn their WTPA wage statement and wage notice claims (see ECF No. 18), the Court has not addressed those claims in this Report and Recommendation.

I. <u>Legal Standard</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-part procedure for entering a default judgment. First, the Clerk of Court enters a default by noting the defaulting party's failure to respond or appear. Fed R. Civ. P. 55(a). Second, if the defaulting party then fails to vacate the entry of default pursuant to Rule 55(c), the appearing party may seek a default judgment to establish liability and, if proven, damages. Fed R. Civ. P. 55(b).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort." <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981); <u>see also</u> <u>Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc.</u>, No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), <u>adopting report and recommendation</u>, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018). While the Second Circuit has recognized the pressure on district courts "to dispose of cases that . . . delay and clog [their] calendar[s]" due to the litigants' "disregard of the rules," the Circuit instructs district courts to "maintain a balance between clearing [their] calendar[s] and affording litigants a reasonable chance to be heard." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95–96 (2d Cir. 1993); <u>see also</u> <u>Jeremiah v. 5 Towns Jewish Times, Inc.</u>, No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023), <u>report and recommendation adopted</u>, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023). Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party."

6

Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96; see also Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts must "supervise default judgments with extreme care to avoid miscarriages of justice"). Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified circumstances, not that it must." Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. at 162. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because the defendant is in default. See, e.g., id.

When a defendant defaults, the defendant is typically deemed to have admitted every well-pleaded allegation of the complaint, "except those claims relating to damages." Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3 (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). However, "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65. In either event, the Court must review the allegations in the Complaint and/or factual averments to determine if the elements of each claim have been adequately pleaded. See id.; Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010), report and recommendation adopted, id. at 151, (explaining that "it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief"). Moreover, the Court may, in deciding whether to grant default judgment, consider whether there are unresolved questions regarding material issues of fact as to liability, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See 10A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2685 (4th ed. 2023).

II. <u>Default</u>

Before turning to the question of whether plaintiffs have adequately pleaded some or all of their claims against the defendant such that default judgment may properly be entered against it, the Court addresses whether defendant in fact defaulted.

Defendant was properly served with the summons and complaint on November 8, 2023. (<u>See</u> Pl.'s Mem. at 1; <u>see also</u> ECF No. 12 (proof of service via authorized agent)). Despite the numerous opportunities afforded to defendant, it has neither contested default nor appeared in this action. Indeed, defendant failed to respond to the Court's inquest order or appear at the inquest hearing, both of which afforded defendant an additional opportunity to challenge the Clerk's entry of default and/or contest the appropriate measure of damages. (<u>See</u> ECF No. 22; Minute Entry dated August 5, 2024). It is therefore beyond dispute that defendant is in default. <u>See</u> <u>Hirsch v. Innovation Int'l, Inc.</u>, No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (holding that defendant's default was "crystal clear" when it failed to oppose the plaintiff's motion for a default judgment).

III. <u>Adequacy of Pleadings</u>

Before recommending that the district court enter default judgment as to some or all of plaintiffs' claims, the Court is obligated to review the allegations in the Complaint and confirm that each of the elements of plaintiffs' claims have been adequately pleaded. <u>See</u> <u>Rolls-Royce PLC v. Rolls-Royce USA, Inc.</u>, 688 F. Supp. 2d at 153. In doing so, the Court accepts plaintiffs' factual allegations as true. <u>See</u> <u>id.</u>; <u>Jeremiah v. 5 Towns Jewish Times, Inc.</u>, 2023 WL 6593997, at *3.

8

A. <u>FLSA Overtime Claims</u>

The FLSA provides that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified." 29 U.S.C. § 207(a)(1). Overtime is calculated at a rate of one and one-half times the employee's regular hourly pay for work performed in excess of 40 hours per week. <u>Id.</u>

To establish an overtime claim under the FLSA, a plaintiff must prove four elements:

1) That the defendant failed to pay the mandated overtime wage;

2) That the defendant is a covered employer under either the "individual coverage" theory or the "enterprise coverage" theory;

3) That plaintiff is an "employee" within the meaning of the FLSA; and

4) That the employment relationship is not one that is exempted from the FLSA.

<u>See</u> <u>id.</u>; <u>Rosenbaum v. Meir</u>, No. 20 CV 4520, 2023 WL 2305960, at *4 (E.D.N.Y. Mar. 1, 2023); <u>Edwards v. Community Enters., Inc.</u>, 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing <u>Tony & Susan Alamo Found. v. Secretary of Lab.</u>, 471 U.S. 290, 295 (1985)). Accepting the allegations in the Complaint as true, the Court concludes that plaintiff has satisfied each of those elements.

1. <u>Underpayments</u>

Plaintiffs allege that during their employment with defendant, they worked over 40 hours in a week and were not paid overtime compensation pursuant to the FLSA. (Compl. ¶¶ 44, 48,

9

58, 64; see also Bonkoungou Decl.[2] ¶¶ 7, 10; Compaore Decl.[3] ¶¶ 7, 10). Under the FLSA, employers are required to pay employees at a rate of one and a half times the employee's regular rate of pay for any hours worked over 40 in a work week. 29 U.S.C. 207(a)(1). Plaintiff Bonkoungou states that even though he generally worked 48 hours a week, he was paid $15.00 for all hours worked regardless of the number of hours worked in a given week. (Compl. ¶¶ 42-44; Bonkoungou Decl. ¶¶ 7, 8, 10). Plaintiff Compaore states that he generally worked 84 hours a week and was paid $15.00 an hour, with no overtime pay. (Compl. ¶¶ 58, 59, 64; Compaore Decl. ¶¶ 7, 8, 10). Accepting plaintiffs' allegations as true, the Court concludes that plaintiffs were not adequately compensated for hours worked in excess of 40 per week.

2. Covered Employer

For purposes of determining employer status under the "Enterprise Coverage" theory, a defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

"[L]iability under the FLSA extends to any 'employer'" once the plaintiff has established individual or enterprise coverage. Gordon v. General Prop. Mgmt. Assocs., Inc., 496 F. Supp. 3d 830, 836 (S.D.N.Y. 2020) (citing 29 U.S.C. § 216(b)). The FLSA defines "employer" to include

---

[2] Citations to "Bonkoungou Decl." refer to the Declaration of Aboubacar Bonkoungou, filed January 7, 2024 (ECF No. 17-1).

[3] Citations to "Compaore Decl." refer to the Declaration of Tenga Compaore, filed January 7, 2024 (ECF No. 17-2).

"any person acting directly or indirectly in the interest of an employer in relation to an employee." Id. § 203(d).[4]

Plaintiff Boukoungou alleges that from the beginning of his employment in 2021 through June 2023, he worked at RPS. (Compl. ¶ 39; Bonkoungou Decl. ¶ 5). Plaintiff Compaore alleges that he worked for RPS from January 2019 through December 2021. (Compl. ¶ 54; Compaore Decl. ¶ 5). They both allege that RPS was and continues to be a covered employer as defined under the FLSA; that it engaged in interstate commerce; and that it had an annual gross volume of sales in excess of $500,000. (Compl. ¶¶ 9, 10, 11, 12). In support of that allegation, plaintiffs state that not only was defendant "an employer engaged in interstate commerce and/or the production of goods for commerce," but both plaintiffs allege that they were "engaged in commerce and/or in the production of goods for commerce." (Id. ¶¶ 9, 41, 56). Accepting these allegations as true for purposes of considering a default judgment motion, these allegations are sufficient to establish that RPS is a covered employer under the enterprise coverage theory. See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 33 (stating that it was "reasonable to infer" that a "Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales" utilized a "wide variety of materials to operate," at least some of which were likely "moved or were produced in interstate commerce").

3. Non-exempt Employee Status

Finally, the Court turns to the third and fourth elements of an FLSA overtime claim: whether plaintiff is an employee for purposes of the FLSA, and whether his employment relationship is exempted from the FLSA. The FLSA defines an "employee" as "any individual

---

[4] "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).

11

employed by an employer." 29 U.S.C. § 203(e)(1); see also Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098. To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a).

The Complaint alleges that plaintiff was employed by defendant, who, as noted above, qualifies as an "employer" within the meaning of the FLSA. Moreover, there is nothing to suggest any basis for exempting the employment relationship at issue from the FLSA's provisions. See 29 U.S.C. § 213(a) (setting forth the exemptions from the minimum wage requirements). The Court therefore concludes that, at least for purposes of a default judgment motion, plaintiff has adequately pleaded the third and fourth elements of an FLSA overtime claim.

    B.    NYLL Overtime, Spread-of-Hours, Minimum Wage, and Prevailing Wage Claims

        1.    Coverage

To recover under the NYLL, the plaintiff must prove that he or she is an "employee" entitled to NYLL's protections and that the defendant is an "employer" as defined by the statute. See Lauria v. Heffernan, 607 F. Supp. 2d 403, 406–09 (E.D.N.Y. 2009). The NYLL's definition of "employer" mirrors that of the FLSA, with the exception that the NYLL has no gross sales or interstate commerce requirement. See NYLL § 651(6); Singh v. Mowla, No. 19 CV 4687, 2022 WL 17820099, at *8, n.8 (E.D.N.Y. Sept. 30, 2022). Similarly, an "employee" is simply defined, in part, as "any individual employed or permitted to work by an employer in any occupation." NYLL § 651(5).

For the same reasons noted above with respect to plaintiffs' FLSA claims, the Court concludes that plaintiffs fit within the definition of "employee," and defendant satisfies the definition of "employer" under the NYLL. Furthermore, there does not appear to be any exception to the definition of "employee" that applies in this case.

2. Overtime

Plaintiffs allege that during the periods of their respective employment, defendant violated the NYLL's overtime wage, minimum wage, and spread-of-hours provisions.[5] Like the FLSA, the NYLL requires that employees be compensated at an overtime rate of one and one-half times their regular hourly pay for time worked in excess of 40 hours in a week. See NYLL § 663; 12 N.Y.C.R.R. § 141-1.4. The elements of an NYLL overtime wage claim largely mirror those of an FLSA overtime wage claim. As already noted when discussing plaintiffs' FLSA overtime wage claim, plaintiffs' weekly pay of $15.00 an hour regardless of the number of hours worked over 40 in a workweek fails to satisfy the overtime requirements of both the FLSA and NYLL.

3. Spread-of-Hours Pay

Plaintiffs allege that they were not paid an additional hour's pay at the basic minimum hourly wage rate for any day worked during which the "spread of hours" –i.e., "the interval between the beginning and end of an employee's workday," – exceeded 10 hours. (Pl.'s Mem. at 5 (citing N.Y.C.R.R. § 142-2.4)). The spread-of-hours regulation plaintiffs cite is part of the wage order for "Miscellaneous Industries and Occupations." See Almonte v. 437 Morris Park, LLC, No. 14 CV 5951, 2015 WL 7460019, at *3 (S.D.N.Y. Nov. 24, 2015). However, this order

---

[5] Unlike the FLSA which has a maximum three-year statute of limitations, the NYLL has a six-year limitations period, which for plaintiff runs from August 31, 2017 through August 31, 2023. (Compl.).

does not apply to employees covered by another minimum wage order. Id. Here, the plaintiffs are covered under the Building Service Order. See 12 N.Y.C.R.R. § 141-3.1. "[T]he Building Service Order. . . does not require employers to pay any spread-of-hours premium to employees." Almonte v. 437 Morris Park, LLC, 2015 WL 7460019, at *3. Absent any authority provided by plaintiff allowing for a spread of hours claim under the Building Service Order, the Court declines to find liability as to this claim.

### 4. Minimum Wage

Additionally, plaintiffs allege minimum wage violations under NYLL. (Compl. ¶¶ 77-81). However, plaintiffs were paid $15 per hour at all times, which is not less than the NYLL minimum wage for the relevant time period. NYLL § 652; 12 N.Y.C.R.R. § 141-1.3. Therefore, plaintiffs do not establish liability as to the NYLL minimum wage claim.

### 5. Prevailing Wage

Plaintiffs also allege that defendant paid less than the prevailing wage for unarmed security guards under city or state contracts. (Compl. ¶¶ 37, 38, 45, 61); see NYLL §§ 230, 231; NYC Admin. Code § 6-130. Plaintiffs allege that they were paid $15 an hour, whereas the applicable prevailing rates were greater than this amount for the relevant time period. (ECF No. 24); NYLL §§ 230, 231; NYC Admin. Code § 6-130. However, there is no private right of action under Section 231 of the NYLL until the employee has exhausted the administrative remedies provided in Section 235. NYLL § 235. Here, plaintiffs have not alleged that an administrative determination was made, and therefore, plaintiffs have not established liability as to a prevailing wage claim under Section 231. See Stennett v. Moveway Transfer & Storage, Inc., 97 A.D.3d 655, 656, 949 N.Y.S.2d 91, 93 (2d Dep't 2012).

C. <u>Breach of Contract Claim</u>

Unlike for statutory claims for failure to pay prevailing wages under NYLL § 231, there is no administrative exhaustion requirement for breach of contract claims to recover owed prevailing wages. <u>Id.</u> at 657. Here, plaintiffs have adequately alleged a breach of contract claim for prevailing wages under a third-party beneficiary theory, since they allege that they "worked on State- and City-funded [] contracts," that the "prevailing wage rate governed these contracts," that "defendants failed to pay them accordingly," and that "[a]s workers on these contracts. . . they were intended beneficiaries." <u>Velasquez v. Vikrant Contracting & Builders, Inc.</u>, No. 15 CV 2783, 2021 WL 1210353, at *6 (E.D.N.Y. Mar. 31, 2021); (<u>see</u> Compl. ¶¶ 36-38, 45, 61).

## DAMAGES

Having found that plaintiffs are entitled to default judgment as to at least some of their claims, the Court now considers their request for damages.[6] Plaintiffs provided an updated damages chart following the inquest hearing. (ECF No. 24). However, there are several inconsistencies in the chart that prevent the Court from recommending an award of damages.

For example, the first row of Bonkoungou's chart indicates that from January 1, 2024, to January 24, 2021 (approximately 3.2857 weeks), he worked 48 hours each week. (ECF No. 24-1). The prevailing wage is listed as $21.82 per hour and the amount he was paid is listed as $15 per hour. Therefore, the difference between what he was paid per hour and what he should have been paid under the prevailing wage rate is $6.82, and thus, the unpaid prevailing wages for the first forty hours of each week during this period should be $272.80. However, plaintiff lists the

---

[6] Since plaintiffs have withdrawn their claims under the WTPA, the Court has not considered their request for damages with respect to those claims.

15

unpaid prevailing wages for the first forty hours of each week as $279.84. Although this might seem like a small discrepancy, these errors increase when multiplied throughout multiple weeks.

To provide another example of a discrepancy in the chart, for the same row, the overtime rate is listed as $23.82 per hour. Therefore, the unpaid wages for each hour of overtime should be $23.82 minus $15 (which is the amount plaintiff was paid), or $8.82 per hour. This hourly rate multiplied by 8 overtime hours per week, multiplied by 3.2857 weeks, results in a total amount owed for this period of $231.84. However, the chart lists the amount owed as $417.42. This discrepancy is likely in part because the overtime hours listed in the chart are 16 hours instead of the 8 to which plaintiff Bonkoungou testified.

Similarly, for plaintiff Compaore's chart, in the first row, the prevailing wage is listed as $21.09 an hour and the effective hourly pay that plaintiff was paid is listed as $15. Therefore, based on the difference, the unpaid prevailing wages per hour should be $6.09, and the unpaid prevailing wages for the first forty hours of each week should be $243.60. However, plaintiff lists the unpaid prevailing wages for the first forty hours of each week as $265.60. Although the Court notes that this overstatement of wages owed for the first forty hours each week is counteracted by an understatement of wages owed for overtime hours, plaintiffs have provided no explanation for their calculations and so the Court is unable to determine how the discrepancy arose.

Given these discrepancies, the Court is unable to recommend an award of damages absent some clarification.

The Court also notes that plaintiffs have not supported their request for the costs of service through an invoice and they have not provided any information regarding the background

and experience of each individual attorney who worked on this case. Without this information, this Court cannot evaluate whether the attorney's fees requested are reasonable. (ECF No. 17-3).

## CONCLUSION

In light of the above, the Court respectfully recommends that the motion for default judgment be granted with respect to liability for plaintiffs' unpaid overtime and breach of contract claims and denied without prejudice with respect to damages. The Court further recommends that plaintiffs be given leave to renew the motion within twenty-one days of any Order adopting this Report and Recommendation, addressing the issues stated above.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is directed to serve this Report and Recommendation on the defendant and file proof of service on the docket immediately thereafter.

**SO ORDERED.**

Dated: Brooklyn, New York
August 20, 2024

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

17