UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ABOUBACAR BONKOUNGOU, et al.,

Plaintiffs,

-against-

ROYAL PROTECTIVE SERVICES, INC.,

Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
23 CV 6553 (CBA) (PCG)

**CROSS-GOLDENBERG,** United States Magistrate Judge:

On August 31, 2023, Plaintiffs Aboubacar Bonkoungou and Tenga Compaore ("Plaintiffs"), on behalf of themselves and all others similarly situated, initiated this action against Defendant Royal Protective Services, Inc. ("RPS" or "Defendant"). Plaintiffs seek compensation for unpaid overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and unpaid minimum and overtime wages, spread of hours pay, and statutory damages for failure to provide wage statements and notices, in violation of the New York Labor Law ("NYLL"), §§ 190 et seq., §§ 650 et seq. (Dkt. No. 1, Compl. ¶¶ 77–103.) Plaintiffs further seek damages under a breach of contract claim, as third-party beneficiaries, for unpaid prevailing wages that are required under city and state contracts. (Id. ¶¶ 36, 37, 104–108); see NYLL §§ 230, 231.

Currently pending before this Court is Plaintiff Bonkoungou's Second Motion for Default Judgment as to Damages, Dkt. No. 36, which District Judge Carol B. Amon referred to Magistrate Judge Cheryl L. Pollak on October 20, 2025. (Order Referring Motion, dated Oct. 20, 2025.) The case was reassigned to the undersigned on January 14, 2026. For the reasons set

forth below, the Court respectfully recommends that the District Court GRANT Plaintiff Bonkoungou's motion and award (1) $ 59,879.72 in damages; (2) pre-judgment interest at the statutory rate from April 1, 2022 to the date of final judgment; and (3) should the District Court reconsider Plaintiff's request for attorney's fees, $6,492.10 in attorneys' fees and costs.

## BACKGROUND

### I. Procedural Background

Despite being properly served with the summons and complaint on November 13, 2023, see Dkt. No. 11, Summons Returned Executed, Defendant RPS failed to appear, answer, or otherwise respond to the Complaint. On November 30, 2023, Plaintiffs requested that the Clerk of Court enter default against Defendant, and default was entered on December 7, 2023. (Dkt. No. 13, Request for Certificate of Default; Dkt. No. 15, Clerk's Entry of Default.) Plaintiffs filed their first Motion for Default Judgment and supporting documents on January 7, 2024. (Dkt. Nos. 16 & 17.) Judge Pollak held an inquest hearing on August 5, 2024, but Defendant failed to appear. (Minute Entry for Inquest Hearing, dated Aug. 5, 2024.) Plaintiffs submitted supplemental documentation in support of their Motion for Default Judgment following the hearing on August 5, 2024. (Dkt. No. 24, "Letter re ECF 16, Inquest Hearing.") On August 20, 2024, Judge Pollak issued her Report and Recommendation, recommending that Plaintiffs' motion for default judgment be (1) granted with respect to liability on Plaintiffs' unpaid overtime and breach of contract claims and (2) denied with respect to Plaintiffs' NYLL minimum wage, prevailing wage, and spread of hours claims and with respect to damages. (Dkt. No. 26, Report and Recommendations ("First R&R"), 13–14.)

On September 6, 2024, Judge Amon adopted the First R&R in full and directed Plaintiffs to file supplemental briefing on the damages calculation within 21 days. (Dkt. No. 29, Mem. and Order Adopting R&R.) On September 11, 2024, Plaintiffs filed supplemental materials with an updated damages chart. (Dkt. No. 30, "Letter re ECF 29.") On October 28, 2024, Judge Amon referred Plaintiffs' supplemental letter to Judge Pollak, who issued her second Report and Recommendation on February 27, 2025. (Order referring Plaintiffs' Letter Supplementing Plaintiffs' Motion for Default Judgment; Dkt. No. 31, Report and Recommendation ("Second R&R").)

In her Second R&R, Judge Pollak recommended that Plaintiff Compaore be awarded damages but that Plaintiff Bonkoungou's Motion for Default Judgment as to damages be denied. (Second R&R, at 1–2.) As to Plaintiff Bonkoungou, Judge Pollak noted that Plaintiff's "damages chart contains several discrepancies and ambiguities that make it difficult for the Court to properly calculate the damages he is owed." (Second R&R, at 18.) Judge Pollak further pointed out that it was unclear under what damages theory as to overtime pay Plaintiff was proceeding—either based on hours worked over eight in one day or based on hours in excess of 40 hours per week. (Id. at 20.) Finally, the Second R&R recommended denying Plaintiffs' attorney's fees because Plaintiffs "did not support their request for the costs of service through any invoices and they did not provide any information regarding the background and experience of each individual attorney who worked on this case" even though the First R&R warned that without this information, the Court could not evaluate whether the fees sought were reasonable. (Second R&R, at 22–23.) On March 12, 2025, Plaintiffs filed a letter addressed to Judge Pollak containing their objections to the denial of attorneys' fees and describing counsels' experience. (Dkt. No. 33, Objections to R&R.) On April 4, 2025, Judge Pollak issued an Electronic Order

regarding the supplemental letter, noting that "[i]t appears to the Court that counsel wishes to be granted leave to supplement their prior application for attorneys' fees," but denying the request in light of Plaintiffs' failure to comply with Local Rule 55.2(c), which requires that a request for damages, including attorneys' fees, must be "sworn or affirmed to by [an individual] with personal knowledge." Local Civil Rule 55.2(c); see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) (holding that "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). On September 12, 2025, the District Court adopted the Second R&R in full, granting Plaintiff Compaore's motion for default judgment as to damages but denying Plaintiff Bonkoungou's motion with leave to renew within 30 days. (Dkt. No. 34, Mem. and Order Adopting R&R.) The District Court also denied with prejudice Plaintiffs' motion for attorney's fees "because they have repeatedly failed to provide the Court with sufficient sworn or affirmed proof to allow the Court to calculate attorney's fees and costs in contravention of the Local Rules." (Id.)

On October 10, 2025, Plaintiff Bonkoungou filed his renewed Motion for Default Judgment as to damages. (Dkt. No. 36, Second Motion for Default Judgment.) Plaintiff's Motion included a Memorandum of Law, Dkt. No. 36, Proposed Order, Dkt. No. 36-1, and Revised Damages Calculation, Dkt. No. 37. On October 20, 2025, the District Court referred the Motion to Judge Pollak for a report and recommendation. (Order Referring Motion, dated Oct. 20, 2025.) The case was reassigned to the undersigned on January 14, 2026.

## II. Factual Background

The only outstanding issue before this Court is Plaintiff Bonkoungou's amount of damages. The Cout incorporates the factual findings of the First and Second R&Rs and assumes familiarity with the facts and conclusions they contain. The Court limits its restatement of the facts to those relevant to the instant motion.

Defendant RPS employed Plaintiff Bonkoungou as an unarmed security guard from January 2021 through June 2023 in New York City public schools in Brooklyn and Staten Island. (Compl. ¶ 39.) Plaintiff Bonkoungou alleges that while employed at Defendant RPS, he regularly worked 48 hours in two shifts: the first shift from Friday night at midnight until Sunday morning at 8:00 AM, and the second shift from Sunday at 4:00 PM until Monday morning at 8:00 AM. (Id. ¶ 42.) Plaintiff Bonkoungou was paid $15 per hour by check for 32 of the hours he worked, and $15 per hour in cash for the remaining 16 hours. (Id. ¶ 43.) Plaintiff was paid the same amount each week regardless of the exact number of hours he worked, which meant that his rate of pay was at times below the prevailing wage in effect. (Id. ¶ 44–45.) Plaintiff also did not receive supplemental benefits during his employment with RPS, which are supplemental hourly wages added to employees' regular prevailing wage rate. (Id. ¶ 46.) The Court already has found Defendant RPS's liability as to Plaintiff's wage and hour claims under the FLSA and the NYLL. (See First R&R; Order Adopting First R&R.) It now considers Plaintiff Bonkoungou's request for damages for unpaid prevailing wages, including supplemental benefits, unpaid overtime damages, liquidated damages on his overtime claims, pre-judgment interest and attorneys' fees and costs. (See generally, Mem. of Law in Support of Plaintiff Bonkoungou's Renewed Mot. for Default Judgment ("Pl.'s Mem.").)

## DISCUSSION

I. Legal Standard for Awarding Damages

When a default judgment is entered, the defendants are deemed to have admitted all well pleaded allegations in the Complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendants have the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc., 973 F.2d at 158. That said, while "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989). Rather, "the court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum." Id. (holding that "it was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment").

II. Damages Requested by Plaintiff

Plaintiff requests $82,359.26 in damages, comprised $40,800.34 in prevailing wages, $9,539.69 in unpaid overtime wages, $9,539.69 in liquidated damages, $15,987.44 in pre-judgment interest, $5,970 in attorneys' fees, and $522.10 in costs and supports the requests with Plaintiff Bonkoungou's declaration, a revised damages chart, and counsel's declaration. (Dkt. No. 17-1, "Bonkoungou Decl.;" Dkt. No. 36, Pl.'s Mem.; Dkt. No. 37, Rev. Damages Chart; Dkt. No. 41, "Aff. of Michael Samuel.")

A. Unpaid Prevailing Wages

In its First R&R, the Court recommended a finding that Plaintiffs had sufficiently established a claim for unpaid prevailing wages under a breach of contract theory because they alleged that they "worked on State- and City-funded [] contracts, that the prevailing wage rate governed these contracts, that defendants failed to pay them accordingly, and that [a]s workers on these contract. . . they were intended beneficiaries." (First R&R, at 15 (quoting Velasquez v. Vikrant Contracting & Builders, Inc., No. 15 CV 2783 (RRM) (RLM), 2021 WL 1210353, at *6 (E.D.N.Y. Mar. 31, 2021))). Where plaintiffs establish liability on a breach of contract claim for prevailing wages, courts award prevailing contractual unpaid wages and any ascertainable supplemental benefits. See Douglas v. Spartan Demolition Co. LLC, No. 15 CIV. 5126 (HBP), 2018 WL 4521212 (S.D.N.Y. Sept. 21, 2018) (awarding plaintiffs prevailing wages under a common law breach of contract theory), Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *44 (E.D.N.Y. May 1, 2015) (awarding plaintiffs supplemental benefits in addition to prevailing wages).

Although the Court found that Plaintiffs had established Defendant's liability on their prevailing wage claims, the Court twice denied Plaintiff Bonkoungou damages, noting "discrepancies and ambiguities that ma[d]e it difficult for the Court to properly calculate the damages he is owed." (Second R&R, at 18–19.) Plaintiff now requests $40,800.34 in unpaid prevailing wages, including the supplemental benefits, from January 2021 through June 2023. (Pl.'s Mem., at 5.) Plaintiff alleges 40 hours of "straight time" per week. (Rev. Damages Chart; see also Compl. ¶ 42.) Plaintiff's revised damages chart cured the discrepancy with respect to Plaintiff's employment period, listing the start date as January 1, 2021, consistent with Plaintiff's Complaint and declaration. (See Rev. Damages Chart; Compl. ¶ 39; Bonkoungou Decl. ¶ 5.)

The revised chart also accurately calculates the prevailing wages Plaintiff is owed: Plaintiff lists the prevailing wage rate plus applicable supplemental benefit based on time of service and subtracts the wages Plaintiff was paid. The chart then multiplies the difference by the 40 straight hours per week and then multiplies that number by the number of weeks in the relevant period. The Court has reviewed the New York City Building Service Employee Prevailing Wage Schedules, which Plaintiffs attached to their supplemental August 5, 2024 letter (Dkt. No. 24) and has found that Plaintiff's calculations accurately reflect his owed hourly prevailing wage and supplemental benefits for each time period.

| Start Date | End Date | No. Weeks | Hours Per Week | Weekly Pay | Effective Hourly Pay | NY Min. Wage* | Missing Min. Wage Per Week* | Min. (Prevailing) Wage Owed |
|---|---|---|---|---|---|---|---|---|
| 1/1/2021 | 1/24/2021 | 3.285714286 | 48 | $720.00 | $15.00 | $21.82 | $272.80 | $896.34 |
| 1/25/2021 | 4/30/2021 | 13.57142857 | 48 | $720.00 | $15.00 | $22.24 | $289.60 | $3,930.29 |
| 5/1/2021 | 6/30/2021 | 8.571428571 | 48 | $720.00 | $15.00 | $22.35 | $294.00 | $2,520.00 |
| 7/1/2021 | 12/31/2021 | 26.14285714 | 48 | $720.00 | $15.00 | $22.49 | $299.60 | $7,832.40 |
| 1/1/2022 | 6/30/2022 | 25.71428571 | 48 | $720.00 | $15.00 | $22.84 | $313.60 | $8,064.00 |
| 7/1/2022 | 12/31/2022 | 26.14285714 | 48 | $720.00 | $15.00 | $23.18 | $327.20 | $8,553.94 |
| 1/1/2023 | 3/31/2023 | 12.71428571 | 48 | $720.00 | $15.00 | $23.41 | $336.40 | $4,277.09 |
| 4/1/2023 | 6/30/2023 | 12.85714286 | 48 | $720.00 | $15.00 | $24.19 | $367.60 | $4,726.29 |
| | | | | | | | | ***$40,800.34*** |

| | |
|---|---|
| Midpoint of employment | 4/1/2022 |
| Date of calculation | 10/10/2025 |
| Years since midpoint | 3.528767123 |

*Prevailing Wage Rate plus applicable supplemental benefit based on time of service

(Excerpt of Rev. Damages Chart.)

Accordingly, the Court respectfully recommends that Plaintiff be awarded $40,800.34 in prevailing wages and supplemental benefits.

B. <u>Unpaid Overtime Wages</u>

Plaintiff seeks reimbursement for the unpaid overtime wages that he should have received pursuant to the NYLL, proceeding under a damages theory based on working in excess of 40 hours per week. (<u>See</u> Pl.'s Mem. at 5.) The NYLL entitles employees to overtime pay at a rate of one-and-one-half times the regular rate for any hours worked in excess of 40 hours in one

workweek. 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4. The regular rate under the NYLL is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5. Under the NYLL, courts calculate an employee's overtime rate using the statutory minimum wage if the employee's pay falls below the minimum wage rate. Rosendo v. Everbrighten Inc., No. 13 CV 7256-JGK-FM, 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), report and recommendation adopted, No. 13 CV 7256-JGK, 2015 WL 4557147 (S.D.N.Y. July 28, 2015).

In the instant case, Plaintiff alleges that he worked 48 hours in two shifts: the first shift from Friday night at midnight until Sunday morning at 8:00 AM, and the second shift from Sunday at 4:00 PM until Monday morning at 8:00 AM. (Compl. ¶ 42.) Plaintiff was paid $15 per hour, which was below the prevailing wage rate. Plaintiff's unpaid overtime wages are calculated by multiplying the prevailing wage rates in each of the time periods by time and a half and subtracting from that amount Plaintiff's paid wages, $15 per hour. That total is then multiplied by the amount of hours worked in excess of 40, i.e., eight. This total is then multiplied by the amount of weeks in each pay period. The Court has independently verified that Plaintiff's calculations in his damages chart accurately calculated the overtime wages he is owed based on a review of the New York City Building Service Employee Prevailing Wages attached to Plaintiff's August 5, 2024 letter (Dkt. No. 24) and online at https://comptroller.nyc.gov/services/for-the-public/workers-rights/wage-schedules/prevailing-wage-archived-schedules/.[1]

[1] In addition to his damages chart, Plaintiff included an excerpt of the damages chart in his memorandum of law. (See Pl.'s Mem., at 6.) That excerpt is incorrect insofar as it lists the total number of weeks Plaintiff worked but only lists one hourly rate and one overtime rate even though Plaintiff's hourly and overtime rates varied over time.

Accordingly, the Court respectfully recommends that Plaintiff Bonkoungou be awarded $9,539.69 in unpaid overtime wages.

C. Liquidated Damages

Plaintiff seeks liquidated damages equal to 100% of the unpaid overtime wages. Plaintiff is not entitled to liquidated damages on his prevailing wage claim because "those damages are recoverable only under a contract theory, not under the NYLL." Gurung v. Malhotra, 851 F. Supp. 2d 583, 593 (S.D.N.Y. 2012). Both the FLSA and the NYLL allow for liquidated damages. 29 U.S.C. § 216(b); NYLL §§ 198(1-a) and 663(1). While plaintiffs may not recover "twice for the same injury," they may "recover under the statute which provides the greatest amount of damages[.]" Charvac v. M & T Project Managers of New York, Inc., No. 12-CV-05637 CBA RER, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015), report and recommendation adopted as modified, No. 12-CV-5637 CBA RER, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015) (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165 (DF), 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)). Under both the FLSA and the NYLL, the employer bears the burden of proving that it had a good faith basis for believing that its underpayment of wages complied with the law. See 29 U.S.C. § 260, NYLL § 198(1–a). This burden "'is a difficult one, with double damages being the norm and single damages the exception.'" Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (awarding 100% liquidated damages under the FLSA standard) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999), holding modified by Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61 (2d Cir. 2003)).

Here, Defendant has defaulted and has not alleged any facts or put forward any arguments to establish that it had a good faith basis to believe that its underpayment of wages

(See id.) The Court has verified that the calculations in Plaintiff's Revised Damages Chart (Dkt. No. 37) are accurate.

complied with the FLSA or the NYLL. Accordingly, the Court respectfully recommends that Plaintiff be awarded liquidated damages in an amount equal to 100% of the overtime wages owed under the NYLL, totaling $9,539.69.

D. Damages Summary

In sum, the Court respectfully recommends the following damages:

| | |
|---|---|
| Prevailing Wages and Supplemental Benefits | $ 40,800.34 |
| Overtime Wages | $ 9,539.69 |
| Liquidated Damages | $ 9,539.69 |
| **TOTAL DAMAGES** | **$ 59,879.72** |

## III. Pre-Judgment Interest

Plaintiff further seeks pre-judgment interest on his damages.

Under New York Law, plaintiffs are entitled to pre-judgment interest at a rate of 9 percent per year. See N.Y.C.P.L.R. § 5004. The Second Circuit has held that under the NYLL, liquidated damages and pre-judgment interest are not functional equivalents, so plaintiffs may recover both liquidated damages and pre-judgment interest for judgments rendered under the NYLL. Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).

Here, the Court respectfully recommends that Plaintiff be awarded pre-judgment interest on his NYLL claims.

In New York, pre-judgment interest is "computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." N.Y. C.P.L.R. § 5001(b). In addition, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." Id. In determining pre-judgment interest, "[c]ourts have discretion in choosing a reasonable date from

which to calculate" it. Ladino v. Cordova, No. 21 CV 2449 (ARR) (SJB), 2024 WL 968898, at *4 (E.D.N.Y. Feb. 14, 2024), report and recommendation adopted, No. 21 CV 2449 (ARR) (SJB), 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024). In this district, courts most often select a "median date between the earliest ascertainable date the cause of action existed and the date the action was filed" from which to calculate pre-judgment interest. Id. (quoting Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012)). Courts may instead use a reasonable midpoint based upon the period of employment subject to the NYLL claim. See, e.g., Thompson v. Hyun Suk Park, 18-CV-0006 (AMD) (ST), 2020 WL 5822455, at *11 (E.D.N.Y. Sep. 1, 2020), report and recommendation adopted, No. 18-CV-00006 (AMD)(ST), 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020) (calculating the midpoint between plaintiff's start and end dates, which represented "the period in which the NYLL claim accrued").

Plaintiff requests pre-judgment interest based on the midpoint of Plaintiff Bonkoungou's employment, which was April 1, 2022. (Pl.'s Mem., at 9.) The Court finds that Plaintiff's suggested midpoint is reasonable, and thus respectfully recommends that Plaintiff be awarded pre-judgment interest at the statutory rate of 9 percent from April 1, 2022 to the date of final judgment.

IV. Attorneys' Fees and Costs

In the First R&R, the Court recommended that Plaintiffs' motion for default judgment be granted as to liability but denied as to damages and attorneys' fees because Plaintiffs "ha[d] not supported their request for the costs of service through an invoice and they ha[d] not provided any information regarding the background and experience of each individual attorney who worked on this case. Without this information, this Court cannot evaluate whether the attorney's fees requested are reasonable." (First R&R, at 16–17.) The District Court adopted the Report

and Recommendation in full. (Dkt. No. 29, Mem. and Order Adopting R&R.) In the Second R&R, the Court again noted that Plaintiffs had "not submitted any additional materials related to their request for attorney's fees despite being given the opportunity to do so." (Second R&R, at 22–23.) The Court thus recommended that Plaintiffs' request for attorneys' fees be deemed waived. (Id. at 23.) Plaintiffs responded to the Second R&R, submitting a paragraph on counsels' experience and listing counsels' billing rates. (See Dkt. No. 33, Objections to R&R.) The Court construed Plaintiffs' letter as a motion for leave to supplement their prior application for attorneys' fees but denied the motion. (Electronic Order dated Apr. 4, 2025.) Pursuant to Local Civil Rule 55.2(c), a request for damages must be "sworn or affirmed to by [an individual] with personal knowledge," and the Court found that "counsel has failed to comply with the requirements of the Local Rules and failed to provide the Court with sufficient information to support an award of attorneys' fees." (Electronic Order dated Apr. 4, 2025.) On September 12, 2025, the District Court adopted the Report and Recommendation in full and denied with prejudice Plaintiffs' request for attorney's fees. (Dkt. No. 34, Mem. and Order Adopting R&R, dated Sept. 12, 2025.)

Despite having been directed twice to supplement his request for attorneys' fees, Plaintiff requested that the Court reconsider its previous recommendation to deny attorneys' fees without supplementing his motion with a sworn statement as required by the Local Rules. (Pl.'s Mem., at 7.) On August 6, 2026, the Court issued an Order to Show Cause why it should not deny Plaintiff's request for a third time in light of his continued failure to submit a sworn statement attesting to the hours worked and services performed. (Order, dated August 6, 2026.) The Court further noted that Plaintiff had not substantiated his request for service of process fees. (Id.) On August 13, 2026, Plaintiff supplemented his motion for default judgment with a sworn statement

and an invoice for the requested process fees. (Dkt. No. 41, Suppl. Decl.) Given that the District Court previously denied with prejudice Plaintiffs' request for attorney's fees, the Court respectfully recommends that Plaintiffs' renewed request for attorney's fees be denied. However, should the District Court reconsider Plaintiff's request for fees, the Court respectfully recommends that it find Plaintiff's requested fees are reasonable.

A. Attorneys' Fees

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions." Callari v. Blackman Plumbing Supply, Inc., No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), report and recommendation adopted, No. 211 CV 3655 (ADS) (AKT), 2020 WL 2769266 (E.D.N.Y. May 28, 2020), see NYLL § 198(4), 663(1). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." Perry v. High Level Dev. Contracting & Sec. LLC, No. 1:20-CV-2180 (AMD) (PK), 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), report and recommendation adopted, No. 20-CV-2180 (AMD) (PK), 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022). In the Second Circuit, "[t]he lodestar method is ordinarily the starting point in determining the amount of fees that may be awarded." Seitzman v. Sun Life Assurance Co. of Canada, 311 F.3d 477, 487 (2nd Cir. 2002). To calculate reasonable attorneys' fees, courts multiply the number of hours reasonably expended on the case by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). What constitutes a "reasonable number of hours" and a "reasonable hourly rate" varies from case-to-case and attorney-to-attorney, and courts will consider both the experience and expertise of the attorney as well as the complexity of the case. See Allen v. Cnty. of Nassau, No. 22-CV-1572 (JMW), 2023 WL 4086457, at *5

(E.D.N.Y. June 20, 2023) (collecting cases); Moore v. Rubin, 766 F. Supp. 3d 423, 428 (E.D.N.Y. Feb. 14, 2025) (finding that, "[a]fter an extensive and well-documented discussion of the impact of inflation on the cost of living…the reasonable hourly rates in this district are now $450 to $650 for partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals.")

Plaintiff requests $5,970 in attorneys' fees and $522.10 in costs, comprised of $402 for the case filing fee and $120.10 for service of process. (Dkt. No. 41, Suppl. Decl.) Two attorneys, Andrew Beresin and Michael Samuel, performed work on the case. (Id.) Mr. Beresin is counsel to the Samuel Law Firm, has been admitted to practice in New York since 1992, and has been litigating wage and hour cases for at least five years. (Id. ¶ 8.) Mr. Beresin's billing rate is $400 and he billed 11:48 hours. (Id. ¶¶ 8, 12.) Attorney Michael Samuel is the founder of the Samuel Law Firm, has been admitted in New York since 1993, and his practice has almost exclusively consisted of wage-and-hour cases. (Id. ¶¶ 6, 12.) His billing rate is $500 and he billed 2:30 hours. (Id.) The Court would find reasonable the hours expended by counsel. The Court further would find counsels' billing rates reasonable because they fall within the reasonable hourly rates in this district. Accordingly, if the District Court reconsiders Plaintiff's request for attorney's fees, the Court would respectfully recommend that Plaintiff be awarded $5,970 in attorneys' fees.

B. Costs

Prevailing parties generally are able to recover costs. However, recovery is available only for costs that are documented. Moon v. Gab Kwon, No. 99 CV 11810 (GEL), 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (quoting Kuzma v. I.R.S., 821 F.2d 930, 933–34 (2d Cir. 1987). "[T]he party moving for costs bears the burden of demonstrating the reasonableness

of each charge; failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery." John v. Demaio, No. 15 CV 6094 (NGG) (CLP), 2016 WL 7469862, at *12 (E.D.N.Y. Sept. 26, 2016), report and recommendation adopted, No. 15 CV 6094 (NGG) (CLP), 2016 WL 7410656 (E.D.N.Y. Dec. 22, 2016). Courts may take judicial notice of the complaint filing fee reflected on the docket. See Douyon v. NY Med. Health Care, P.C., 49 F. Supp. 3d 328 (E.D.N.Y. 2014), judgment entered sub nom. Douyon v. N.Y. Med. Health Care, P.C., No. CV 10-3983 AKT, 2015 WL 5821499 (E.D.N.Y. Sept. 30, 2015) (taking judicial notice of the filing fee reflected on the docket).

Plaintiff seeks $522.10 in costs, consisting of the district court filing fee and service of process fees. The Court takes judicial notice of the filing fee, which was $402 as reflected on the docket. (Dkt. No. 1, Compl.) Plaintiff has substantiated his request for service of process fees with an invoice for $120.10. (Dkt. No. 41-1.) Accordingly, if the District Court reconsiders Plaintiff's request for attorney's fees and costs, the Court would respectfully recommend that Plaintiff be awarded $522.10 in costs.

## CONCLUSION

The Court respectfully recommends that Plaintiff's motion for default judgment as to damages be granted, and that Plaintiff be awarded **$ 59,879.72**, consisting of:

(1) $40,800.34 in unpaid prevailing wages;
(2) $9,539.69 in unpaid overtime wages;
(3) $9,539.69 in liquidated damages; and
(4) Pre-judgment interest at the statutory rate of 9 percent from April 1, 2022 to the date of final judgment;

Any objections to this Report and Recommendation must be filed with the Clerk of Court, with a copy to the undersigned, withing fourteen (14) days of receipt of this Report. 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the district court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is Ordered to serve a copy of this Report and Recommendation on defendants **today** via overnight delivery or courier and file proof of service immediately thereafter. The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail and to file proof of mailing on the docket.

**SO ORDERED.**

Dated: Brooklyn, New York
August 25, 2026

/s/ Peggy Cross-Goldenberg
Peggy Cross-Goldenberg
United States Magistrate Judge
Eastern District of New York